# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

TERRY E. COBB,                          :
                                        :
            Plaintiff,                  :
                                        :
v.                                      :          No. 3:08cv1130 (MRK)(WIG)
                                        :
MICHAEL J. ASTRUE,                      :
Commissioner of Social Security,        :
                                        :
            Defendant.                  :

## RULING AND ORDER

On July 29, 2008, Plaintiff Terry E. Cobb sought judicial review under 42 U.S.C. § 405(g) of Defendant Commissioner of Social Security's denial of his application for supplemental security income ("SSI") benefits.  On February 26, 2009, United States Magistrate Judge William Garfinkel issued a Recommended Ruling on Mr. Cobb's Motion for Summary Judgment [doc. # 16] and Defendant's Motion to Affirm [doc. # 18], in which Judge Garfinkel recommended that the Commissioner's decision be affirmed because the Administrative Law Judge's ("ALJ") decision was supported by substantial evidence.  *See* Recommended Ruling on Pending Motions [doc. # 21] [hereinafter Rec. Ruling].

On March 9, 2009, Mr. Cobb timely filed a number of objections to the Recommended Ruling, to which the Commissioner then replied.  *See generally* Pl.'s Objections to Rec. Ruling on Pending Motions [doc. # 22]; Def.'s Resp. to Pl.'s Objection to Rec. Ruling on Pending Motions [doc. # 23].  In particular, Mr. Cobb contends that the record does not support the ALJ's decision because: (1) the ALJ failed to obtain a consultative examination regarding any possible mental impairment that he may have suffered on account of his four strokes; (2) the ALJ failed to consider Mr. Cobb's statements regarding his increased urinary frequency, which Mr. Cobb attributed to his

hypertension medication; (3) the ALJ failed to include Mr. Cobb's persistent dysarthria as an impairment in the hypothetical questions presented to the vocational expert; and (4) the ALJ failed to determine Mr. Cobb's eligibility for benefits for the time period between July 7, 2005 and August 17, 2006.

The Court assumes the parties' familiarity with the facts of this case, and refers the reader to Judge Garfinkel's Recommended Ruling, which contains a thorough and comprehensive recitation of the record evidence and the underlying administrative decisions. *See* Rec. Ruling [doc. # 21] at 3-20. The Court has benefitted greatly from Judge Garfinkel's extensive analysis of the record evidence. After reviewing the record in connection with Mr. Cobb's objections, the Court agrees with Judge Garfinkel's Recommended Ruling in almost all respects and departs only in its ultimate legal conclusion that the ALJ's failure to address Mr. Cobb's urinary frequency when rendering a decision deprived the Commissioner of substantial evidence necessary to support the denial of Mr. Cobb's claim.[1] Thus, the Court adopts the Recommended Ruling insofar as it rejects Mr. Cobb's arguments that (1) the ALJ failed to order consultative examinations regarding his alleged speech and mental impairments and (2) the ALJ failed to support her findings as to his residual functional

---

[1] In light of the Court's decision on Mr. Cobb's second objection, the Court need not reach Mr. Cobb's third and fourth objections – namely, the scope of the hypothetical questions presented to the vocational expert and Mr. Cobb's possible entitlement to minimal retroactive benefits. The court notes that these objections were not raised before Judge Garfinkel. The Court leaves it to the Commissioner to decide whether Mr. Cobb, who is now proceeding with the benefit of counsel, may pursue these issues on remand. *See, e.g.,* 20 C.F.R. § 416.945(a)(2) ("We will consider all of your medically determinable impairments of which we are aware . . . when we assess your residual functional capacity."); *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002) ("A hypothetical question posed to a vocational expert 'must reflect *all* of a claimant's impairments.' . . . Where there exists in the record medically undisputed evidence of specific impairments not included in a hypothetical question . . . , the expert's response is not considered substantial evidence."); *Morrison v. Apfel*, 146 F.3d 625, 628 (8th Cir. 1998) (same).

capacity ("RFC").  However, as the Court explains in detail later, the Court grants Mr. Cobb's objection that the ALJ erred in failing to address his increased urinary needs before denying his claim.

For the reasons that follow, the Recommended Ruling [doc. # 21] is ACCEPTED in part and REJECTED in part, Mr. Cobb's Motion for Summary Judgment [doc. # 16] is GRANTED in part and DENIED in part, and the Commissioner's Motion to Affirm [doc. # 18] is DENIED.

## I.

Where a party objects to a magistrate judge's recommendation in accordance with 28 U.S.C. § 636(b)(1), the Court must make a "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  § 636(b)(1).  That said, when conducting this review, the Court is limited to determining whether there is substantial evidence to support the Commissioner's decision and whether the Commissioner applied the correct legal standard.  *See Lamay v. Comm'r of Social Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (citing 42 U.S.C. § 405(g)).  Substantial evidence is "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (quotation marks omitted).

Mr. Cobb first complains that the ALJ was required to obtain an evaluation of his mental status before rendering a decision on his benefits application.  The parties agree that Social Security Ruling 96-7p, which states as follows, applies:  "The adjudicator must develop evidence regarding the possibility of a medically determinable mental impairment when the record contains information to  suggest that such an impairment exists, and the individual alleges pain or other symptoms, but

the medical signs and laboratory finds do not substantiate any physical impairment(s) capable of producing the pain or other symptoms." SSR 96-7p, Evaluation of Symptoms in Disability Claims, 1996 WL 374186, at *2 n.3 (July 2, 1996); *see also* 20 C.F.R. § 416.929(b).  However, they dispute whether evidence of any mental impairments exists in the record.  In support of his Motion for Summary Judgment [doc. # 16], Mr. Cobb cited to a Disability Report dated October 16, 2006, in which the SSA field office interviewer describes him as "confused" and his memory as a "little slow."  *See* Record [doc. # 13] at 149.  In response to Judge Garfinkel's Recommended Ruling finding no error in the ALJ's failure to obtain a consultative examination, Mr. Cobb now cites another possible indication of mental impairment – namely, an August 25, 2005 neurological examination by the Tully Health Center that states that Mr. Cobb has "trouble getting words out." *See id.* at 185.

The Magistrate Judge has already addressed the merits of Mr. Cobb's argument in detail.  *See* Rec. Ruling [doc. # 21] at 27-30. The Court adopts Judge Garfinkel's findings and conclusions in their entirety as to this issue, and writes only to respond to Mr. Cobb's additional citation to the record, which he says lends further support to his position.  The Court disagrees with Mr. Cobb. Although his August 25, 2005 neurological evaluation does state that he had "trouble getting words out," this note is listed under the "Communication" field of the evaluation, not the "Cognition/Behavior/Perceptual" field of the evaluation. *See* Record [doc. # 13] at 186, 219.  Thus, read in context, this note corresponds to the speech difficulties that Mr. Cobb undisputedly faced immediately following his four strokes, and not to any mental impairment that Mr. Cobb now claims he suffered.  This interpretation is consistent with a subsequent neurological evaluation by the Tully Health Center only a day later on August 26, 2005, in which no complaints were noted under

"Cognition/Behavior/Perceptual," while "dysarthric, slightly slurred" was noted under "Communication."  *See* Record [doc. #13] at 190, 223.

Moreover, and as Judge Garfinkel correctly noted in his Recommended Ruling, Mr. Cobb never complained of any possible mental impairment during his regular doctors' visits (nor was any such impairment ever noted in the objective medical evidence).  Further, he did not mention any adverse mental effects from his strokes when the ALJ specifically asked him whether any mental problems affected his ability to work.  *See* Record [doc. #13] at 20-21.  "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim."  *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 2005) (quotation marks omitted).  Contrary to Mr. Cobb's assertion, the record does not contain information to suggest that a mental impairment exists, and thus, the ALJ did not err in failing to obtain a consultative examination for any suspected cognitive impairment. *See Yancey v. Apfel* 145 F.3d 106, 114 (2d Cir. 1998) ("Yancey provided no evidence of a psychiatric or psychological impairment, and offers no legal basis for her argument that such an examination was either required or necessary."); *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998).  Accordingly, for the reasons stated by the Court and by Judge Garfinkel in his Recommended Ruling, the Court rejects Mr. Cobb's objection that a consultative examination for any possible mental impairment was necessary on the basis of this record.

Mr. Cobb next argues that the ALJ impermissibly ignored his statements regarding his frequent urinary needs as well as the vocational expert's response concerning how this might affect his ability to engage in substantial gainful activity for purposes of a disability determination.  Unlike Mr. Cobb's argument regarding his possible mental impairment, the Court believes this issue

5

presents a closer question that implicates the ALJ's assessment of Mr. Cobb's credibility and ultimately, her finding of his residual functional capacity and prospect for gainful employment. In his Recommended Ruling, Judge Garfinkel expressed misgivings about the ALJ's treatment of this issue, but nonetheless concluded that the ALJ did not err in failing to credit Mr. Cobb's statements concerning the side effects of his hypertension medication. *See generally* Rec. Ruling [doc. # 21] at 30-34. In doing so, the Judge Garfinkel relied on the ALJ's general assessment of Mr. Cobb's credibility as well as Mr. Cobb's inconsistent answers to two questionnaires and his ample opportunity at the administrative hearing to discuss the impact of his increased urination on his ability to work. *See id.* Although the Court agrees with Judge Garfinkel's discussion of Mr. Cobb's urinary needs, the Court reaches a different legal conclusion based on the particular facts presented in this case.

The Court's review of the record indicates that there were five references to Mr. Cobb's increased urinary frequency, which he attributed to a prescribed diuretic called hydrochlorothiazide that he takes for hypertension. Three undated Disability Reports list a side effect from Mr. Cobb's treatment with hydrochlorothiazide as making him "urinate a lot." *See* Record [doc. # 13] at 136 (undated "Disability Report"); *id.* at 154 (undated "Disability Report"); *id.* at 175 (undated "Disability Report"). In addition, Mr. Cobb indicates in two questionnaires that this medication causes him to urinate "very often – about every hour for a few seconds" and "about ten times a day as [a] result of the medication. Some times it takes seconds and other times 5 to ten minutes due to water intake." *See id.* at 165 ("Questionnaire on Side Effects of Medications" dated 11/17/06); *id.* at 167 (undated "Questionnaire on Side Effects of Medications").

That said, the Recommended Ruling accurately reflects that the objective medical evidence

6

is devoid of any discussion of Mr. Cobb's increased urinary frequency as a result of taking hydrochlorothiazide. *See* Rec. Ruling [doc. # 21] at 32 ("Although the medical records contain numerous references to Plaintiff's complaints about other adverse side effects from this drug, nowhere does Plaintiff complain about the frequency of urination."). However, as the ALJ acknowledged in her decision, "[w]henever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record." Record [doc. # 13] at 26; *see also* SSR 96-7p, 1996 WL 374186, at *2. Social Security Ruling 96-7p also provides that "[w]hen additional information is needed to assess the credibility of the individual's statements about symptoms and their effects, the adjudicator must make every reasonable effort to obtain available information that could shed light on the credibility of the individual's statements." 1996 WL 374186, at *3. Moreover, "[t]he determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision." *Id.* at *4; *see also Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 261 (2d Cir. 1988) ("A finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record.").

Nevertheless, in his Recommended Ruling, Judge Garfinkel points out that the ALJ's decision does not even discuss Mr. Cobb's claim of excessive urination as a result of his treatment for

hypertension, and certainly the ALJ's general assessment of Mr. Cobb's credibility in no way refers to his claim of frequent urination. *See* Rec. Ruling [doc. # 21] at 31 ("The ALJ made no reference to his need to urinate frequently in her decision."). Judge Garfinkel also accurately notes that the ALJ assessed Mr. Cobb's overall credibility when she found that his "statements concerning the intensity, persistence and limiting effects of [his] symptoms [were] not credible to the extent they are inconsistent with the residual functional capacity assessment . . . ." *See id.* at 33; Record [doc. # 13] at 26.  However, even assuming the ALJ found Mr. Cobb's claim of increased urination was unsupported by the medical record, her blanket and general statements regarding Mr. Cobb's credibility lack the requisite specificity for Mr. Cobb or any subsequent reviewer to determine the weight the ALJ attributed to Mr. Cobb's claims regarding the frequency of urination, not to mention the basis for the ALJ's assessment of the weight of that claim.  As the Social Security Administration's own procedures recognize,  "[i]t is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *See* SSR 96-7p, 1996 WL 374186, at *4; *see also* SSR 96-8p, Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at *7 (Jul. 2, 1996) ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and nonmedical evidence. . . . The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence.").

Nor did the ALJ assess the limiting effects of any claimed increased urination in light of Mr. Cobb's other daily activities. *Compare Poupore v. Astrue*, --- F.3d --- , 2009 WL 1011685, at *3 (2d Cir. Apr. 16, 2009) (per curiam) (concluding that the ALJ properly discredited the plaintiff's

testimony about his limitations where the ALJ "properly noted" that he recovered well from his ankle injury and participated in many routine daily activities); *Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005) ("The ALJ also found Johnson's complaints of pain to be inconsistent with her testimony of her routine activities. . . . These activities are also inconsistent with the allegedly disabling 'doped up' effect Johnson suffers from her medications.").  Although Judge Garfinkel properly notes the seeming inconsistencies between Mr. Cobb's claimed urination and his statements "that he could shop for two hours at a time" and "attended church regularly," *see* Rec. Ruling [doc. # 21] at 31, in her decision, the ALJ made no such reference to these statements at all.  Indeed, the statements regarding church and shopping appeared in the federal reviewing official's decision, which found that Mr. Cobb was credible.  *See* Record [doc. # 13] at 82.  Yet, the ALJ's only narrative discussion of Mr. Cobb's credibility and his residual functional capacity appears limited to the apparent inconsistencies between Mr. Cobb's statements about his decreased strength, balance, and mobility on his left side and the treatment notes, findings, and conclusions of the treating or state agency physicians.  *See* Record [doc. # 13] at 26-28.  Even when the Court considers the lack of objective medical evidence on this issue, it cannot conclude that the ALJ's general credibility determination necessarily encompassed a finding as to Mr. Cobb's claimed urinary needs.  *See* SSR 96-7p, 1996 WL 374186, at *6 ("[T]he absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms is only one factor that the adjudicator must consider in assessing an individual's credibility and must be considered in the context of all the evidence."); 20 C.F.R. § 416.929(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not

substantiate your statements.).

The absence of any discussion of Mr. Cobb's credibility on this specific issue is particularly troubling since the Commissioner's vocational expert responded to the ALJ that "if the hypothetical individual had to urinate every hour and would be off task and away from the work site this would be beyond the typical work breaks of 10-15 minutes after 2 hours or work, 30-45 minutes after 4 hours of work, and 10-15 minutes after 6 hours of work."  Record [doc. # 13] at 353.  The vocational expert answered that hourly urination in addition to intermittent breaks throughout the day for dizziness would mean that "the individual could not perform any work on a sustained basis." *Id.*  Yet, despite this seemingly critical finding as to how Mr. Cobb's urination needs might affect his ability for substantial gainful activity, there is no discussion of this issue in the ALJ's denial of his claim. This is so despite the fact that the vocational expert's response indicated that such a limitation might affect Mr. Cobb's ability to perform any work that exists in significant numbers in the national economy.  *See* Record [doc. # 13] at 352-53.  In these circumstances, the ALJ was required to expressly assess Mr. Cobb's credibility and determine whether Mr. Cobb's claimed side effect could act as a limitation on his ability to work. Yet, it is apparent that the ALJ did not do so.

Therefore, instead of reviewing the record for substantial evidence in support of any such factual finding, the Court, like Judge Garfinkel, is forced to guess that the ALJ must have discredited Mr. Cobb's statements regarding the extent and disruptive effect of his increased urination on the basis of the federal reviewing official's findings or Mr. Cobb's other, unrelated statements that he could go grocery shopping and attend church, both of which he stated took approximately two hours. *See* Rec. Ruling [doc. # 21] at 31.  *Compare Burns*, 312 F.3d at 130 (finding the ALJ's decision to discredit the plaintiff's side effects from medication was based on substantial evidence and

specifically addressed in the ALJ's opinion).  Presumably, the ALJ disregarded the more restrictive hypothetical question that had been posed to the vocational expert after concluding that Mr. Cobb's claim of increased urination was neither credible nor a treatment-related limitation that would narrow the range and types of work that he may be able to perform.

However, the Court's task on de novo review does not include guessing about what may or may not have been going through the ALJ's mind on this important issue or substituting the Court's judgment for that of the Commissioner. *See Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002) ("Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, we will not substitute our judgment for that of the Commissioner."); *Johnson*, 434 F.3d at 658 ("Although we cannot make credibility determinations, we are empowered to review the ALJ's decisions for substantial evidence, and we find that substantial evidence supports the ALJ's credibility assessment.").  Rather, the impact of Mr. Cobb's urinary frequency on his ability to work is a question that the ALJ should have addressed directly.  "It was particularly important that the ALJ explore these symptoms with plaintiff so that the ALJ could effectively exercise his discretion to evaluate the credibility . . . of the claimant . . . in order to arrive at an independent judgment, in light of medical findings and other evidence . . . ." *Hankerson v. Harris*, 636 F.2d 893, 896 (2d Cir. 1980) (quotation marks omitted); *see also Veino*, 312 F.3d at 589 ("[I]t is questionable whether the vocational evidence supports the conclusion that Veino is currently able to carry on substantial gainful activity."); *Rosa*, 168 F.3d at 82 ("[T]he ALJ improperly permitted the government to meet its burden of proof [regarding Rosa's RFC] on the basis of an absence of evidence supporting Rosa's contrary position. . . . [T]he record actually raises significant doubts as to Rosa's capacity to perform these activities.").  The ALJ did not make credibility findings that were

integral to Mr. Cobb's claim, and therefore deprived the Commissioner's decision of substantial evidence to support it.

Finally, Judge Garfinkel correctly notes in his Recommended Ruling that Mr. Cobb did not raise his frequent urination as a limitation during his administrative hearing despite the ALJ's invitation for him to discuss his objections to the underlying record as well as any way in which his strokes had affected him. *See* Rec. Ruling [doc. # 21] at 33; *see also* Record [doc. # 13] at 48, 51, and 59. This is so despite Mr. Cobb's discussion of other physical problems such as dizziness, foot drop, decreased mobility, strength and endurance, and speech problems. While ordinarily these gaps would be significant, the Court is unwilling to hold these gaps against Mr. Cobb since he was proceeding *pro se* and this was a central issue for both Mr. Cobb and the vocational expert. "[W]here the claimant was handicapped by lack of counsel at the administrative hearing, the reviewing court has a duty to make a searching investigation of the record to ensure that the claimant's rights have been adequately protected." *Hankerson*, 636 F.2d at 895. Here, the ALJ did advise Mr. Cobb of his right to have a representative present at his hearing. *See* Record [doc. # 13] at 33. However, even after Mr. Cobb opted to proceed forward without a representative, "where a claimant proceeds *pro se*, the ALJ has a duty to 'scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.'" *Lamay*, 563 F.3d at 509 (quoting *Hankerson*, 636 F.2d at 895). Despite this heightened obligation to Mr. Cobb to develop the record, the ALJ did not ask Mr. Cobb a single question about either the side effects of his medication or his increased urination. *See generally* Record [doc. # 13] at 32-70.

It is quite apparent that the ALJ serves an important function in developing and evaluating the record. "It is the ALJ's duty to investigate and develop the facts and . . . arguments both for and

12

against the granting of benefits. . . . The ALJ therefore owes a duty to the Commissioner as well as to the claimant." *Butts v. Barnhart*, 388 F.3d 377, 386 (2d Cir. 2004) (quotation marks and citations omitted).  Despite the ALJ's non-adversarial role in developing the facts, Mr. Cobb's hearing is devoid of any discussion of his frequent urinary needs.  Moreover, the ALJ did not seek to elicit information from Mr. Cobb about the side effects of his hypertension medication despite the vocational expert's written indication that whether "the hypothetical individual" had urinary frequency in excess of his typical work breaks may affect his ability to perform work on a sustained basis.  *See* Record [doc. # 13] at 353.  Given the information provided by the vocational evidence, why the ALJ chose not to explore Mr. Cobb's claimed condition with him to determine whether it still presented as a problem and if so, how it affected his daily activities and ability to work, is perplexing at best.  Had the ALJ inquired of Mr. Cobb concerning this issue, more fully developed the record, and expressly addressed Mr. Cobb's credibility in the ALJ's denial of his claim, the Court would be in a much different position in reviewing this record for substantial evidence in support of the Commissioner's decision.  *See also* Rec. Ruling [doc. # 21] at 31 ("The Court agrees with Plaintiff that it would have been helpful if the ALJ had questioned him about this specifically at the hearing . . . .").

As the Court previously stated, whether substantial evidence exists to support the Commissioner's decision in this case is a close question.  However, given the particular facts of this case – namely, the ALJ's heightened obligation to a *pro se* claimant, the ALJ's failure to question Mr. Cobb about his urinary needs, and the absence of any specific credibility finding on this issue despite its central importance in the vocational expert's response – the Court grants Mr. Cobb's objection that the ALJ's decision was not based on substantial evidence because the ALJ failed to expressly and

13

directly consider his urinary needs and the vocational expert's testimony.   Although the Commissioner may ultimately decide this issue precisely as Judge Garfinkel predicts in his Recommended Ruling, process matters, and the ALJ should be required to address Mr. Cobb's urinary needs at the hearing and before denying his disability claim.  Mr. Cobb's ability to engage in substantial gainful activity as a result of his frequent urination remains to be explored on remand. Therefore, the Court reverses the decision of the Commissioner of Social Security and remands the case for a rehearing in accordance with Sentence Four of 42 U.S.C. § 405(g).

## II.

Accordingly, the Court ACCEPTS in part and REJECTS in part the Recommended Ruling on Pending Motions [doc. # 16].  The Court accepts the Recommended Ruling in its entirety with the exception of its legal conclusion that the ALJ did not err in failing to address Mr. Cobb's increased urination at the hearing or in failing to take this into account in her assessment of his ability to perform other jobs in the national economy.  *See* Rec. Ruling [doc. # 21] at 34.  As to this issue, the Court grants Mr. Cobb's objection that the ALJ failed to consider his statements and that the Commissioner's decision is therefore unsupported by substantial evidence.  How Mr. Cobb's claimed side effect of increased urination affects his ability to work remains to be explored on remand and addressed by the Commissioner in any subsequent disability determination.  Thus, the Court REVERSES the decision of the Commissioner of Social Security and REMANDS the cause for a rehearing in accordance with Sentence Four of 42 U.S.C. § 405(g) to determine Mr. Cobb's residual functional capacity and whether adequate jobs exist in the national economy that he can perform.  **The Clerk is directed to close this case.**

14

IT IS SO ORDERED.


/s/ _____Mark R. Kravitz_____
United States District Judge


Dated at New Haven, Connecticut: **May 13, 2009.**